J-A30030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: C.J., A MINOR

APPEAL OF: S.D., BIRTH MOTHER

: IN THE SUPERIOR COURT OF
:     PENNSYLVANIA
:
:
:
:
:
:
:
:
:
: No. 1082 WDA 2018

Appeal from the Order Entered, July 2, 2018,
in the Court of Common Pleas of Allegheny County,
Orphans' Court at No(s):  CP-02-AP-0000034-2018.

BEFORE:   SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY KUNSELMAN, J.:        **FILED JANUARY 31, 2019**

S.D. (Mother) appeals the orphans' court order involuntarily terminating her parental rights to her eight-year-old daughter, C.J. (Child), pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b) of the Adoption Act.[1]  After careful consideration, we affirm.

The Allegheny County Office of Children Youth and Families (CYF) became involved with the family in March 2014 following allegations that C.J.'s two-year-old sibling was left home alone and naked.[2]  Mother was criminally charged for the incident, leading to a summary disorderly conduct conviction after Mother completed parenting classes.  CYF worked with Mother to

_____

[1] The orphans' court also terminated the parental rights of C.A.J. (Father), who does not appeal.

[2] At the time of the termination hearing, Mother had four other, non-subject children, three of which are out of her care.

*   Retired Senior Judge assigned to the Superior Court.

implement a safety program to keep Child in her care, but CYF eventually removed Child from the home after Mother left Child in a relative's home where there was alleged domestic violence. The juvenile court adjudicated Child dependent in July 2014.

CYF established goals to facilitate the reunification between Mother and Child. The goals included: Obtain prenatal care for Mother's expected child; resolve all criminal matters; engage in drug/alcohol assessment; submit to a mental health evaluation; attend random drug screens; attend all medical, dental, and educational events; and obtain housing. While Mother purportedly made some progress, the court did not believe she was capable of caring for Child, who suffers from significant behavioral issues. On May 30, 2017, the court changed the dependency goal from reunification to adoption. On January 30, 2018, CYF filed a petition to involuntarily terminate Mother's rights. The orphans' court held a hearing on June 22, 2018.

Child's legal interests were represented by counsel pursuant to 23 Pa.C.S.A. § 2313(a). After consulting with Child regarding her preferred outcome, counsel advocated **against** termination. Nevertheless, the orphans' court granted CYF's petition and terminated Mother's rights. Mother filed this timely appeal. She presents two issues for our review:

> 1. Did the orphans' court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (8)?
>
> 2. Did the orphans' court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of

proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S.A. § 2511(b)?

*See* Mother's Brief, at 6.

We adhere to the following standard in termination appeals:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re R.J.T.,* 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As [the Pennsylvania Supreme Court] discussed in *R.J.T.,* there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Supreme Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

- 3 -

***In re Adoption of S.P.***, 47 A.3d 817, 826-827 (Pa. 2012) (some internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.L.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weight and convincing as to enable the trier of fact to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" ***Id.*** (quoting ***In re J.L.C.,*** 837 A.2d 1247, 1251 (Pa. Super. 2003).)

Termination of parental rights is governed by § 2511[3] of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis:

_____

[3] Section 2511 provides, in relevant part:

### § 2511.  Grounds for involuntary termination

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

 (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In order to affirm the orphans' court, we need only agree with its termination decision as to any one subsection of § 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We consider § 2511(a)(2) and (b).

---

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

In her brief, Mother argues that CYF's case rested on the agency's concerns about Mother's mental health, specifically, that Mother was incapable of parenting Child due to Child's special needs. *See* Mother's Brief, at 17. Mother contends that Child does not display those combative behavioral issues in Mother's presence. *Id.* Thus, Mother's alleged inability to deal with Child's special needs is an improper basis for termination. As evidence that she has the ability to parent, Mother points to the fact that the juvenile court saw it fit to return to Mother's care a non-subject infant. *Id*.

Child argues that Mother has made significant progress on her goals. *See* Child's Brief, at 14. She similarly contends that Child's "behavioral issues don't escalate around Mother…." *Id.* Moreover, all parties and the orphans' court recognize that Child has a bond with Mother. Thus, Mother and Child claim that termination does not serve Child's best interests.

The Supreme Court set forth our inquiry under section § 2511(a)(2) as follows:

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." If and only if grounds for termination are established under subsection (a), does a court consider "the developmental, physical and emotional needs and welfare of the child" under § 2511(b).
>
> [Our Supreme] Court has addressed incapacity sufficient for termination under § 2511(a)(2):

> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012) (citations omitted).

The record supports the orphans' court conclusion that Mother is incapable of parenting Child.

Since the inception of Child's dependency case, Mother has made only minimal progress. Mother has struggled with her goal of obtaining housing. Throughout the life of the case, more than four years, Mother moved from friend to friend, relative to relative. *Id.*, at 16. She only achieved independent housing, with the help of services, two weeks before the orphans' court issued its findings of fact, and she has not established that this will be stable.

Mother continues to use marijuana, which was not prescribed. The court described her use as possibly chronic. *See* Findings of Fact, at ¶ 15. Over the course of the dependency case, Mother attended only one-third of her 63 drug screens. Of those she attended, half were positive. Her last positive screen was shortly before CYF filed the termination petition. Her illicit drug use means Mother constantly risks some sort of criminal liability. Even the most innocuous inference is that Mother's drug use constitutes a sort of self-medication for issues she has yet to treat.

To that end, the orphans' court recognized Mother's own history of being a dependent child in foster care. The court ordered Mother to engage in appropriate therapy. She was referred repeatedly to various agencies for evaluation and mental health therapy. She never complied. *Id*., at ¶ 18.

Meanwhile, Child has significant special needs that require skilled parenting. She has been in seven different placements since her removal. Child is diagnosed with Disruptive Behavior Disorder; Reactive Attachment Disorder; Attention Deficit Hyperactivity Disorder; and Oppositional Defiant Disorder. Child has serious behavioral issues including "extreme physical aggression and 'meltdowns.'" *Id.*, at ¶¶ 19-21. She has incurred psychiatric hospitalizations to ensure she was not a danger to herself or to others. The court concluded that Mother cannot meet the heightened parenting demands a child with special needs poses. Indeed, the court concluded that Mother is unfamiliar with Child's psychological needs. *Id.*, at ¶ 31.

Mother and Child argue that the juvenile court determined that Mother was fit enough to return the Child's infant sibling to her care. They reason that if Mother is capable of parenting the baby, she is capable of parenting Child. But caring for an infant and caring for a special needs child with aggression issues require different skillsets. Moreover, we cannot ignore the difficulty that parenting multiple children poses.

Upon our review of the transcript of testimony, the exhibits admitted at trial, the orphans' court opinion and findings of fact, we conclude that CYF met its burden in proving that termination was warranted under § 2511(a)(2).

We turn now to § 2511(b), the second step of the termination analysis.

The focus under this section shifts from the parent to the child. ***See In re Adoption of C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under § 2511(b), our Supreme Court has stated:

> [I]f the grounds for termination under section (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. "The continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." Nor are we of the opinion that the biological connection between appellant and the children is sufficient in of itself, or when considered in

connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. "The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted).

Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite the existence of some bond, where placement with mother could be contrary to the child's best interests). A parent's basic constitutional right to the custody and rearing of the child is converted, upon the failure to fulfil her parental duties, to the child's right to have proper parenting and fulfillment of the child's potential in a permanent, healthy, safe environment. *See In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

Here, Child's advocacy against termination has certainly given us pause. The CYF expert witness, psychologist Dr. Eric Bernstein, performed two evaluations leading up to the termination. He characterized Child's bond with her Mother as a strong one. "Mother is everything, and [Child] strongly loves her mother and wants to be with her. I don't see that necessarily changing." N.T., at 25. And Mother's visitation had been poor prior to the birth of Child's youngest sibling, but Mother had been consistent with her visitation since September 2017, albeit after the petition was filed. The psychologist recommended ongoing contact with Mother if the court terminated parental

rights; but Mother does not believe the pre-adoptive foster parent will allow for such contact.

Yet, the psychologist still recommended termination. The orphans' court agreed and adopted the psychologist's findings as its own.[4] The psychologist concluded Mother is unable to meet Child's needs and welfare:

> Mother is also unfamiliar with the [Child]'s needs, specifically related to mental health and that [the Child has] aggression and behavioral difficulties. To consider reunification would arguably require Mother to be well-informed of her children's needs including related to mental health, behavior, and education. That she views the children as exceptionally adjusted without any difficulties raises questions and concerns about how she will ultimately support their needs if reunified. […] I appreciate that during her pregnancy she abstains from using any substances, but whether she will maintain this abstinence for the future also is in question. She has a history of impulsivity and lack of planning. Her decision to engage in a relationship in the summer of 2017, which resulted in pregnancy reflects just that. She and the child's father have yet to in any way discuss the raising of their unborn[5] child and how each will meaningfully participate in providing for his everyday needs. She appears to be more focused upon the present than so much planning for necessary responsibilities in the future. I have concerns about how she will consistently fulfill a full-time role of meeting the children's needs and her own.

---

[4] The psychologist conducted two evaluations and corresponding reports. The first evaluation was in September 2017. The second evaluation was in April 2018.

[5] This child was born by the time the court held the termination hearing.

*See* Findings of Fact, at ¶ 31 (quoting Exhibit 1, Psychologist's evaluation from September 2017). The psychologist's opinion did not change after his second evaluation. Again, the orphans' court adopted his findings as its own:

> Mother needs to find more effective ways of managing stress and emotions than through the use of drugs. I strongly encourage Mother to attend drug and alcohol counseling with a dual diagnosis component to also address her mental health. The more comprehensive level of support she receives ultimately the more likely she will maintain abstinence and work to increase her level of insight and skills to manage intense emotions. She should also receive an evaluation from a psychiatrist in conjunction with her mental health and drug and alcohol treatment. Her failure to consistently attend counseling in the recent past raised significant concerns about her commitment to health and recovery. I offer her a guarded prognosis with respect to following through with long-term compliance to mental healthcare.
>
> As much as she is an appropriate candidate to receive a comprehensive level of treatment, I am not convinced that she will maintain consistent investment in such treatment. It is this issue that is [important] when considering whether she will be able to maintain not only her own needs but also the needs of her children. When considering [Child] for example who clearly has a number of diagnoses and need for specialized support and services, I have serious concerns about Mother supporting and facilitating all of [Child's] treatment and meeting her needs. She has limited understanding and appreciation for [Child's] difficulties. She did not know the names of the medication or [Child's] therapist information.

*Id.*, at ¶ 32 (citing the psychologist).

These findings are supported by the record. The court was forced to appoint Child an educational and medical decision-maker, because CYF could not obtain from Mother her consent to allow Child to receive services. *See*

N.T., at 106. Mother is either unfamiliar with Child's special needs or denies that Child has them. Mother's inability to parent has harmed Child's development.

While Child does share a bond with Mother, it is clear that this bond has negatively impacted Child. Child acted out when Mother missed visits. ***Id.***, at 122. Mother's inconsistency in Child's life has caused Child to act in anger and resentment. The psychologist testified Mother's absences and Child's subsequent disappointment has significantly – and negatively – impacted their bond. Child regresses and struggles to control herself when faced with disappointments from Mother. ***Id.***, at 26; ***see also*** Exhibit 2, at 13. Sadly, Mother denies that Child has difficulties.

At the hearing, the psychologist testified, "I cannot think of any scenario in which [Child] comes out unscathed." ***See*** N.T., at 53. But the record is clear. Mother cannot meet Child's emotional or developmental needs. It is all the more tragic that Child still seeks to be in Mother's care, despite the fact that Mother has stunted her development.

Upon our review, we similarly conclude that CYF met its burden in proving that termination was warranted under § 2511(b).

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/31/2019